**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**DAVID MIMS, JR., and**
**MARIEL MIMS, as next friends of**
**D.M. III,**

          **Plaintiffs,**

**vs.**
                                    **Case No.:**

**MIKE WILLIAMS**, in his official capacity
as Sheriff of the Consolidated City of
Jacksonville, Florida; **OFFICER J.A. MACK**,
Individually; and **OFFICER T.D. BENNETT**,
Individually,

          **Defendants.**

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, David Mims, Jr. and Mariel Mims, as next friends of D.M. III, bring this action seeking monetary damages, attorney's fees, and costs against Defendants and allege the following:

1.     This is an action for damages, attorney's fees, and costs for the deprivation of Plaintiffs' rights secured by the Fourth and Fourteenth Amendment to the United States Constitution as well as claims under Florida law.

### JURISDICTION AND VENUE

2.     Plaintiffs invoke the jurisdiction of this court pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §§1331 and 1343, as to the federal claims herein. The court has supplemental jurisdiction as to the state law claims pursuant to 28 U.S.C. §1367.

3.     Venue in this district is proper pursuant to 28 U.S.C. §1391, in that the cause of action arose in this district.

## PARTIES

4.    Plaintiff, David Mims, Jr., is a resident of Jacksonville, Duval County, Florida and a citizen of the United States, and is the father of minor Plaintiff, D.M. III.

5.    Plaintiff, Mariel Mims, is a resident of Jacksonville, Duval County, Florida and a citizen of the United States, and is the mother of minor Plaintiff, D.M. III.

6.    D.M. III, is a resident of Jacksonville, Duval County, Florida and a citizen of the United States. At all times relevant, D.M. III was a twelve year old boy.

7.    Defendant, J.A. Mack, was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office ("JSO"). At all times relevant to this cause, Defendant Mack acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

8.    Defendant, T.D. Bennett, was, at all times relevant, a sworn member of JSO. At all times relevant to this cause, Defendant Bennett acted in conformity with the customs, practices, and/or policies of JSO and acted under the color of state law.

9.    Defendant, Mike Williams, in his official capacity as Sheriff of the City of Jacksonville, Florida, was at all times relevant, responsible for the supervision, training, instruction, discipline, control, and conduct of police officers of JSO and made policy for JSO with respect to seizures, searches, arrests, and use of force. At all times relevant, Defendant Williams had the power, right, and duty to train and control his officers, agents, and employees to conform to the Constitution of the United States and to ensure that all orders, rules, instructions, and regulations promulgated for JSO were consistent with the Constitution of the United States. At all times relevant, Sheriff Williams' agents and employees acted under color of state of law.

## FACTUAL ALLEGATIONS

10. On or about November 13, 2017, the school bus dropped off D.M. III, as well as several other students, in front of the Courtney Meadows Apartments.

11. D.M. III was walking home with a friend, alongside another individual, with whom he was not familiar.

12. The unknown individual stopped at a vehicle with its windows rolled down and entered the car to remove property, at which point D.M. III and his friend told the individual to stop and attempted to distance themselves from the perpetrator.

13. Unbeknownst to the perpetrator, the vehicle owner was watching the incident and began to run after the students.

14. The vehicle owner caught up to D.M. III, at which point his mother and Officer Mack arrived at the scene.

15. Officer Mack ordered D.M. III to stop, at which point D.M. III looked to his mother and began to walk towards his mother.

16. Officer Mack grabbed D.M. III, slammed him into the ground, and swiftly placed a knee in his back.

17. Officer Mack proceeded to pull D.M. III's hair and slam his phone onto the pavement, shattering it.

18. Numerous witnesses to the vehicle theft, including the vehicle's owner, all reported to Officer Mack that D.M. III was not responsible for the theft and had committed no crimes.

19. Officer Mack ignored the witness accounts that D.M. III did not burglarize the vehicle and handcuffed D.M. III, placed him in the back of his police vehicle, and then transferred him to another police vehicle where he was detained for approximately an hour and a half.

3

20.     Officer T.D. Bennett issued D.M. III a juvenile civil citation while at the scene for resisting an officer without violence.

21.     Following D.M. III's release from detention, he was taken to Mayo Clinic where he was diagnosed with a humerus fracture and cervical strain and sprain, which required numerous physical therapy appointments.

22.     The charge against D.M. III was ultimately dismissed.

23.     Defendant Mack's use of force is part of a longstanding practice by JSO of tolerating the use of force against individuals who are not resisting.

24.     In December 2004, a member of JSO slammed Sammy Lee Evans to the ground. Mr. Evans hit his head on the ground as he was slammed by the officer and this resulted in Mr. Evans' death. Mr. Evans was not resisting the arrest, which was for open container of alcohol.

25.     In January 2006, members of JSO broke the right jaw of Bryan Barnes when effectuating his arrest. The JSO members struck Barnes despite the fact that Barnes complied with all of their commands and did not resist the officers while being arrested. *See Barnes v. Sheriff Rutherford, et. al.,* Case No.:3:08-cv-217-J-33JRK (M.D. Fla. Jacksonville Division). There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until prompted by the City of Jacksonville Office of General Counsel sending of a complaint to JSO in January 12, 2011. This complaint and accompanying investigation was made four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit was settled. The JSO Internal Affairs Unit concluded as follows relating to Mr. Barnes' incident: "that charge of <u>EXCESSIVE FORCE</u> against Police Lieutenant R. W. Beltz #7862 and Police Officer C. M. Weippert # 7829 be classified as <u>NOT SUSTAINED.</u>

26.     In January 2006, a member of JSO kneed Ronal Ferrera in the face three times while Ferrera was handcuffed.

27.     In October 2007, two members of JSO, along with a civilian "ride along," rammed the head of Colin Runge into a steel door in the intake area of the jail. At the time, Runge was fully secured and unable to resist the officers as he was in total appendage restraint, otherwise known as being "hog-tied."

28.     In January 2008, a member of JSO broke the jaw of Larue Perkins by slamming him to the pavement of a parking lot. At the time, Perkins was complying with the officer's directive to leave the parking area. Perkins was also falsely arrested after having his jaw broken. Perkins filed a written internal affairs complaint with JSO shortly after the January 2008 incident. On January 21, 2011, almost three years after the incident, the JSO Internal Affairs Unit received an "in-house complaint" from the City of Jacksonville's Office of General Counsel regarding the January 2008 incident involving Perkins. The subject matter of the complaint was the JSO officer's excessive use of force against Perkins. The in-house complaint was then investigated by the JSO Internal Affairs Unit which concluded that "the charge of Excessive Force against Police Officer R. J. Tolen #5597 be classified as NOT SUSTAINED."

29.     In September 2008, a member of JSO dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head, resulting in paralysis to Mr. Lunsford. The officer did so despite Lunsford's prior warning to the officer that Lunsford had 4 screws and a plate in his neck. *See Lunsford v. Rutherford, et. al.,* Case No.:3:09-cv-01015-MMH-MCR (M.D. Fla. Jacksonville Division). Upon information and belief, the incident was referred to JSO Internal Affairs and no disciplinary action was taken against the officer involved.

30. In May 2010, a member of JSO fractured multiple facial bones of David Kemp when the officer violently struck Mr. Kemp as he laid on the ground in compliance with the officer's commands to do so. *See Kemp v. Rutherford et. al.,* Case No.: 3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division). Despite Sheriff Rutherford's actual notice of Mr. Kemp's incident because of the federal lawsuit filed against him, Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and officer involved and failed to discipline the officer involved.

31. In March 2012, members of JSO questioned Kyle Fowler concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members due to the behavior of the officers and told them he was not interested in speaking anymore, and began to walk towards his gate. As he did so, the JSO members knocked Mr. Fowler through a closed metal gate and onto the ground. The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him and effectuate his false arrest, injuring Mr. Fowler in the process. The charge on which Mr. Fowler was falsely arrested, resisting an officer without violence, was ultimately dismissed. The JSO members involved were not disciplined or reprimanded for their actions against Mr. Fowler.

32. In June 2013, a member of JSO violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident. Mr. Slade was merely asking the officer when his insurance information would be taken following the accident when he was forcefully thrown to the ground. Mr. Slade was falsely arrested for resisting an officer without violence in violation of §843.02, Fla. Stat. (2012). The charges against

Mr. Slade were dismissed. The JSO member involved was not disciplined or reprimanded for his actions against Mr. Slade.

33.     On November 12, 2014, at the Duval County Pretrial Detention Facility, a member of JSO violently slammed Deandre Ezell's head into a concrete wall, while Mr. Ezell was handcuffed. The use of force knocked Mr. Ezell unconscious and resulted in Mr. Ezell's hospitalization. At the time of the incident, Mr. Ezell was a minor. None of the officers involved in the use of force were disciplined or reprimanded.

34.     On April 4, 2017, Connell Crooms was participating in a peaceful protest at Hemming Park Plaza in Jacksonville Florida, when a counter-protestor reached his arm over the shoulder of a member of JSO and stuck his middle finger in Mr. Crooms' face. Rather than apprehend the aggressor, members of JSO threw Connell Crooms to the ground, struck him repeatedly in the back and face, and fired a Taser into his back, all of which caused Mr. Crooms to lose consciousness and require hospitalization. Mr. Crooms is deaf and did not resist or disobey any of the officers' commands.

35.     On April 26, 2017, Daniel Nyman was seeking treatment at UF Health Jacksonville when a member of JSO spat at Mr. Nyman, charged at Mr. Nyman, threw him to the ground, shoved Mr. Nyman's jaw into the ground with his knee, and then flipped Mr. Nyman over and kneed him in the back. Mr. Nyman required repair of his previously treated broken jaw and was hospitalized for five days following the attack.

36.     In April 2016, members of JSO violently took down John Blessing while effectuating his arrest. The force caused Mr. Blessing to lose 75% of the function in his arm. The charges on which Mr. Blessing was arrested for, resisting without violence, disorderly intoxication, and battery, were ultimately dropped after the Court found the JSO officer did not investigate the

7

alleged crime or establish probable cause. JSO members involved were not disciplined or reprimanded for their actions against Mr. Blessing.

37.    In June 2017, members of JSO struck a seventeen-year old minor in the face multiple times while the minor was handcuffed inside a patrol car. The minor child required medical attention at the scene.

38.    Accordingly, JSO has a practice, custom and/or policy of failing to adequately investigate and discipline its officers for their excessive use of force.

## COUNT I
## UNREASONABLE SEARCH and SEIZURE: EXCESSIVE FORCE
### (Defendant J.A. Mack)

39.    Paragraphs 1 through 38 above are realleged and incorporated by reference herein.

40.    Defendant Mack's actions in slamming D.M. III into the pavement, shoving his knee into D.M. III's back, and breaking D.M. III's arm constituted an unreasonable seizure under the Fourth and Fourteenth Amendment of the United States Constitution.

41.    The acts and omissions above were undertaken with Defendant Mack's willful, wanton, callous, and knowing disregard of the clearly established rights of D.M. III under the law to be free from unreasonable searches and seizures.

42.    As a direct and proximate result of Defendant Mack's seizure, D.M. III suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiffs, demand judgment against Defendant Officer J.A. Mack, individually, for:

(a)    actual and compensatory damages;

(b)    punitive damages;

8

(c)     an award of attorney's fees and costs; and

(d)     any other relief this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983
## UNREASONABLE SEARCH AND SEIZURE: FALSE ARREST
### (Defendant T.D. Bennett)

43.     Paragraphs 1 through 38 above are realleged and incorporated by reference herein.

44.     Defendant Bennett arrested D.M. III without probable cause or even arguable probable cause.

45.     Defendant Bennett's actions in seizing D.M. III constitute an unreasonable search and seizure of D.M. III under the Fourth and Fourteenth Amendments to the United States Constitution.

46.     The acts and inactions above were undertaken with Defendant Bennett's willful, wanton, callous, and knowing disregard to the clearly established rights of D.M. III under the law to be free from unreasonable searches and seizures.

47.     As a direct and proximate result of Defendant Bennett's unlawful search and seizure, D.M. III suffered damages, including, but not limited to, the cost of defending the associated criminal action, loss of liberty, injury to reputation, humiliation, and severe emotional and psychological distress.

WHEREFORE, Plaintiffs, demand judgment against Defendant T.D. Bennett, individually, for:

a) actual and compensatory damages;

b) punitive damages;

c) an award of attorney's fees and costs; and

d) any other relief this Court deems just and proper.

## COUNT III
## MUNICIPAL LIABILITY
### (Defendant Williams)

48.    Paragraphs 1 through 38 above are realleged and incorporated by reference herein.

49.    Defendant Williams, in his official capacity as Sheriff of the City of Jacksonville, his agents and employees, acting within their authority and under color of state law, instituted and followed customs, practices, and/or policies which directly resulted in use of excessive force against D.M. III, which were the moving force causing his injuries and is actionable under 42 U.S.C. §1983 as a violation of the Fourth and Fourteenth Amendments to the United States Constitution. JSO has a widespread custom, practice, and/or policy of using excessive force. By failing to discipline its officers for the use of excessive force against D.M. III, Defendant Williams has ratified his officers' decisions and reasons for those decisions, thus constituting a practice, custom, or policy. Alternatively, the officers acting on the scene were the final policy makers for the Sheriff's Office, as their decisions were not immediately or effectively reviewable.

50.    As a direct and proximate result of the actions and/or inactions of the Sheriff's Office, D.M. III has suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

51.    JSO has a practice, custom and/or policy of failing to adequately investigate and discipline its officers for their excessive use of force.

WHEREFORE, Plaintiffs, demand judgment against Defendant, Sheriff Williams, in his official capacity as Sheriff for the City of Jacksonville, for:

(a)    actual and compensatory damages;

(b)    an award of attorney's fees and costs; and

(c)    any other relief this Court deems just and proper.

## COUNT IV
## STATE LAW CLAIM: BATTERY
### (Defendant Williams)

52.     Paragraphs 1 through 38 above are realleged and incorporated by reference herein.

53.     Plaintiffs have satisfied all conditions precedent to bringing this action as required pursuant to §786.28, Fla. Stat. (2018) and §§112.201-112.205, Jacksonville Ordinance Code.

54.     Defendant Mack, an officer of JSO, actually and intentionally struck D.M. III against his will, without legal justification.

55.     Sheriff Williams, having given his officers the authority to use force against D.M. III, is liable for abuse of such authority.

56.     D.M. III, as a result of Defendant Mack's battery and abuse of his authority, suffered damages, including, but not limited to, severe pain and suffering, physical injuries, mental anguish and emotional distress.

WHEREFORE, Plaintiffs, demand judgment against Sheriff Williams in his official capacity as Sheriff for the City of Jacksonville, for:

(a)     actual and compensatory damages;

(b)     costs; and

(c)     any other relief this Court deems just and proper.

## COUNT V
## STATE LAW CLAIM:  FALSE IMPRISONMENT
### (Defendant Williams)

57.     Paragraphs 1 through 38 above are realleged and incorporated by reference herein.

58.     Plaintiffs have satisfied all conditions precedent to bringing this action as required pursuant to Section 768.28, Florida Statutes (2018), and §§ 112.201-112.205, Jacksonville Ordinance Code.

11

59. Employees of JSO unlawfully restrained D.M. III against his will under circumstances where such detention was unreasonable and unwarranted.

60. As a result of his false arrest, D.M. III has suffered loss of liberty, injury to reputation, humiliation, and severe emotional and psychological distress.

WHEREFORE, Plaintiffs, demand judgment against Sheriff Williams in his official capacity as Sheriff of the City of Jacksonville, Florida for:

    (a)    actual and compensatory damages;

    (b)    costs; and

    (c)    any other relief this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

DATED this _28th_ day of February, 2019.

Respectfully submitted,

Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 55712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:    (904) 356-9661
Facsimile:    (904) 356-9667
Email:    sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFFS

lr[mims.complaint]

13